Argued September 13; modified November 10, 1938

IN RE LOWENGART'S ESTATE

BRILL ET AL. *v.* HOLMAN

(84 P. (2d) 105)

*Andrew Koerner*, of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for appellants.
*Dean H. Dickinson*, of Portland, for respondent.

LUSK,. J. In a proceeding to determine inheritance tax the court below decreed that certain remainder interests, transferred in trust by Ignatz Lowengart, deceased, of Portland, Oregon, were subject to the tax. The executors of the last will and testament of Ignatz Lowengart, deceased, have appealed. The question is whether or not these remainder interests constitute property or an interest therein, passing or vesting by deed, grant or gift, intended to take effect in possession or enjoyment after the death of the grantor, within the meaning of Section 10-601, Oregon Code 1930.

Under date of December 1, 1924, Ignatz Lowengart executed a trust indenture by which he transferred to Strong and MacNaughton Trust Company, a corporation, as trustee, a certain promissory note for $50,000, with directions to pay the income therefrom to his daughter, Ruth L. Brill, during her life. The instrument provided: "In the event that said Ruth L. Brill shall die before the first party (Lowengart), said trust shall then terminate and the trustee shall pay over the principal and any accumulation of income to the first party." It is then provided that in the event Ruth L. Brill, the daughter, should survive the settlor the trust should continue during her life and thereafter until her youngest living child should attain the age of twenty-one years; that, after the death of Ruth L.

Brill and during the term of the trust, the trustee should pay the income to the children, share and share alike, and to the issue of any deceased child or children per stirpes; and on the termination of the trust, namely, after the death of Ruth L. Brill and when her youngest living child should have attained the age of twenty-one years, or all should have died before attaining that age, that the principal and any accumulations of income should be paid to such of her children as should have attained the age of twenty-one years and were then living, and to the children of any deceased child or children per stirpes, share and share alike. In the event that at the time of the termination of the trust (Ruth L. Brill surviving the settlor) all her children should have died and there should be no issue surviving them, then the corpus of the trust was to go to the heirs at law of the survivor, according to the laws of descent and distribution of the state of Oregon. The instrument further provided: "That first party has assigned, set over and transferred all his right, title and interest in and to the trust estate, and may in no manner rescind this agreement or revoke the trust hereby created." No control over the trust property was reserved by the settlor, nor any right to alter or modify the trust or to receive any portion of the income.

Under date of January 6, 1925, additional securities were transferred to the trustee, upon the trusts and subject to the provisions and conditions set forth in the indenture of December 1, 1924. Under date of January 3, 1928, Strong and MacNaughton Trust Company executed a declaration of trust by which it acknowledged that it held in trust certain real property in the city of Portland, Multnomah county, Oregon, conveyed to it by Ignatz Lowengart. The terms of the

trust are identical with those contained in the previously executed instruments.

The First National Bank of Portland, Oregon, has succeeded Strong and MacNaughton Trust Company as trustee.

Ignatz Lowengart died on April 28, 1936, his daughter, Ruth L. Brill, and two grandchildren surviving him.

In accordance with the contention of the respondent state treasurer, the court below held that the remainder interests were gifts intended to take effect in possession or enjoyment after the death of the grantor, and were therefore taxable. The sole controversy here, apart from a subordinate question relating to interest, revolves about that holding, there being no claim that the life estate of Ruth L. Brill is taxable or that the gifts were made in contemplation of death.

To reverse the decree the appellants argue that death is the generating source of all inheritance taxes; that by the terms of the trust instruments Ignatz Lowengart, during his lifetime, parted with all his interest in the property and stripped himself of every vestige of control over it; that, consequently, the grandchildren, after the death of the settlor, succeeded to nothing which they did not already have before his death, and there is no interest arising after the settlor's death, or by reason of his death, to be taxed.

The respondent on the other hand says that the ultimate vesting of the remaindermen's interest in possession and enjoyment was suspended and held in abeyance until the death of Ignatz Lowengart and was always subject to be defeated by his death should Ruth L. Brill predecease him, in view of the provision that the property should revert to him should that event occur; that, therefore, not until after the death of

Ignatz Lowengart was the succession complete; and that consequently the gifts were intended to take effect in possession and enjoyment after his death, and are subject to tax.

Section 10-601, Oregon Code 1930, provides that: "All property within the jurisdiction of the state, and any interest therein * * * which shall pass or vest * * * by deed, grant, bargain, sale or gift * * * intended to take effect in possession or enjoyment after the death of the grantor, bargainor or donor to any person or persons" shall be subject to the state inheritance tax. The inheritance tax statutes of most of the states, and the estate tax law of the United States, contain similar provisions (see dissenting opinion of Mr. Justice Roberts in *Coolidge v. Long*, 282 U. S. 582, 607 (75 L. Ed. 562, 572, 51 S. Ct. 306)) and the courts of the country, both federal and state, have been called upon to determine the application of these provisions to a variety of situations in a large number of cases with varying and inharmonious results. (See annotations, 49 A. L. R. 864; 67 A. L. R. 1247; 100 A. L. R. 1244.) This court has had occasion to construe and apply the provision only once. In the case of *In re Estate of Wallace*, 131 Or. 597 (282 P. 760), the decedent had organized a corporation to hold his real estate, which he transferred to the corporation, reserving to himself a life estate in the conveyed property. The corporation had no other assets. He made a gift of thirty-five of the forty-eight shares of the corporation's capital stock to five of his children, but withheld from them the right to vote the stock during his life. In view of the reservation of the life estate to the donor and the fact that he retained the right to vote the stock it was held that upon the death of the donor the stock was subject to a payment of an inheritance tax in the hands of the transferees.

 We are not concerned here with a tax on the privilege of transmission, but with a tax on the privilege of succession. "Our statute looks not to the estate or interest which was ended by death, but to the estate or interest which was newly created by death." *In re Inman's Estate,* 101 Or. 182, 194 (199 P. 615, 16 A. L. R. 675). If the privilege of succession was not completely exercised up to the time of the death of Ignatz Lowengart, and, if, at or after his death, the beneficiaries "succeeded to an interest not previously enjoyed which bears a distinct and necessary relation to the death of the settlor" (*Hackett v. Bankers Trust Company,* 122 Conn. 107 (187 Atl. 653)), then the tax was properly imposed. In determining that question "technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices." *Saltonstall v. Saltonstall,* 276 U. S. 260 (72 L. Ed. 565, 48 S. Ct. 225, affirming 256 Mass. 519). See *Burnet v. Guggenheim,* 288 U. S. 280, 283 (53 S. Ct. 369, 77 L. Ed. 748) ; *McCaughn v. Girard Trust Company,* 11 Fed. (2d) 520; *Corliss v. Bowers,* 281 U. S. 376, 378 (50 S. Ct. 336, 74 L. Ed. 916) ; *In re Estate of Schuh, Brown v. Hauck,* 66 Mont. 50 (212 P. 516). The tendency of the courts in recent years has been to make "the shifting of the economic benefits and burdens" the test of liability to the tax. *Reinecke v. Northern 'Trust Company,* 278 U. S. 339 (73 L. Ed. 410, 49 S. Ct. 123, 66 A. L. R. 397) ; *Chase National Bank v. United States,* 278 U. S. 327 (73 L. Ed. 405, 49 S. Ct. 126, 63 A. L. R. 388) ; *Blodgett v. Union & New Haven Trust Company,* 97 Conn. 405 (116 Atl. 908) ; *Blodgett v. Guaranty Trust Company,* 114 Conn. 207 (158 Atl. 245) ; 14 Minn. Law Rev. 453, 462.

With these general principles in mind we proceed to an examination of some of the authorities which bear more or less directly on the question for decision.

In his scholarly article, ''Taxation of Transfers Intended'', 14 Minn. Law Rev. 458, 484, Professor Rottschaefer has this to say regarding the problem here presented:

''The right of the remainderman can never in such a case be anything but conditional as long as the donor lives. Whether that involves the conclusion that he can never enter into possession and enjoyment of the property until at or after such death depends on what is meant by possession and enjoyment. There is no doubt that on the donor's death before the owner of the present interest in enjoyment dies, the remainderman's interest increases in value and that some economic benefits shift to him at that time and because of such death, nor can it be denied that those benefits could not have come to him prior to such death. There exist, therefore, good reasons for taxing the succession to such remainders, but the true reason is not that the deed created a possibility of reverter to the donor but that it was only at the time of, and because of, the donor's death that there occurred a fundamental change in the nature of the remainderman's relations in respect of the property, and that that change could not, under the deed of transfer, have occurred prior thereto.''

The view thus expressed was taken by the court in *Hackett v. Bankers Trust Company*, supra. Several trusts were involved. One contained a provision for reversion of the corpus to the settlor at the death of the survivor of two successive life tenants, if the settlor be then living, or if he be not living, that it pass to his issue, or in default thereof to Lehigh University. Another contained a similar provision for reverter of principal to the settlor in default of wife or children of his son at the termination of the life use of the latter, if

the settlor be then living, with alternative remainders to others if the settlor be not then alive. Quoting with approval the language from Professor Rottschaefer's article, supra, and citing at length the case of *Boston Safe Deposit and Trust Company v. Commissioner*, 267 Mass. 240 (166 N. E. 729), to which attention presently will be called, the court held that these provisions in the trust deeds, under which the trusts might come to an end through the death of the life tenant before that of the settlor, warranted a conclusion "that the transfers to the ultimate beneficiaries were 'by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferror' ".

In *Boston Safe Deposit and Trust Company v. Commissioner*, supra, there was a provision for a life estate, at the termination of which the corpus was to go to the settlors if living, but if not to their grandchildren. The settlors died before the life tenant, and on her death the principal of the estate, passing to the grandchildren, was held subject to the succession tax. While there were undoubtedly present in this case other sufficient grounds for the decision, nevertheless the court assigned as one of the reasons for holding the succession incomplete the fact that the grandchildren could never enjoy the estate unless the life tenant survived the settlors. The supreme judicial court of Massachusetts, speaking through Chief Justice Rugg, said:

"The circumstance that the succession in possession and enjoyment to the ultimate beneficiaries was not to occur until the death of a third person is of no consequence upon the facts here disclosed. There could be no such succession until 'after the death of the grantor.' The statute does not require that such succession must take place immediately upon such death, but only after such death. The lapse of a reasonable interval thereafter and the intervention of another specified event as

a further condition of the succession do not affect the validity of the excise. This is not an instance where the succession passed to the beneficiaries independently of the death of the person from whom the property passed, and hence the principle applied in First National Bank v. Commissioner of Corporations and Taxation, 258 Mass. 253 (154 N. E. 844), is not relevant.''

DuBois' Appeal, 121 Pa. 368 (15 Atl. 641), is another case involving a gift clearly taxable on other grounds but in which the court also relied on the fact that the deed provided for a reverter to the donor if the donee predeceased him, and the court's reasoning was substantially the same as that of the Massachusetts court in the case just cited. The lower New York courts apparently are at odds on the question. In the following cases the right to impose a tax because of a provision in a trust instrument for reverter to the transferor in the event of the prior death of a life tenant has been denied: *In re Bowers' Estate*, 195 App. Div. 548 (186 N. Y. S. 912); *In re Wing's Estate*, 190 N. Y. S. 908; *In re Kirby's Estate*, 231 N. Y. S. 408 (133 Misc. Rep. 152); *In re Schweinert's Estate*, 234 N. Y. S. 307 (133 Misc. Rep. 762); *In re Barstow's Estate*, 244 N. Y. S. 588 (230 App. Div. 371), affirmed without opinion 256 N. Y. 647 (177 N. E. 177). In *In re Schermerhorn's Estate*, 149 N. Y. S. 95, and *In re Dunlap's Estate*, 199 N. Y. S. 147 (205 App. Div. 128), the right was sustained.

The appellants place their principal reliance on *Helvering v. St. Louis Union Trust Company*, 296 U. S. 39 (80 L. Ed. 29, 56 S. Ct. 74, 100 A. L. R. 1239); *Becker v. St. Louis Union Trust Company*, 296 U. S. 48 (80 L. Ed. 35, 56 S. Ct. 78); and *Duke v. Commissioner*, 23 B. T. A. 1104. As the facts of all these cases are alike a discussion of the first will suffice.

Securities were transferred to a trustee in trust, the net income to be paid to the decedent's daughter with remainder over to certain named persons. As in this case, the trust agreement contained a provision that if the grantor's daughter should predecease him the estate was to revert to him, and in other respects the trust instrument did not materially differ from those now under consideration. The decision turned on the effect of the provision for a reverter to the donor in case the life tenant should predecease him, and the supreme court held that the gift was not for that reason subject to the federal tax, saying:

"Complete ownership of the gift, together with all its incidents, has passed during the life of both donor and donee, and no interest of any kind remains to pass to one or cease in the other in consequence of the death which happens afterward."

The court further said:

"If, therefore, no interest in the property involved in a given case pass 'from the possession, enjoyment or control of the donor at his death', there is no interest with respect to which the decedent has created a trust intended to take effect in possession or enjoyment at or after his death. The grantor here, by the trust instrument, left in himself no power to resume ownership, possession, or enjoyment, except upon a contingency in the nature of a condition subsequent, the occurrence of which was entirely fortuitous, so far as any control, design or volition on his part was concerned. After the execution of the trust he held no right in the trust estate which in any sense was the subject of testamentary disposition. His death passed no interest to any of the beneficiaries of the trust, and enlarged none beyond what was conveyed by the indenture. His death simply put an end to what, at best, was a mere possibility of a reverter by extinguishing it; that is to say, by converting what was merely possible into an utter impossibility."

Mr. Justice Stone wrote a dissenting opinion which was concurred in by the Chief Justice, Mr. Justice Brandeis, and Mr. Justice Cardoza. The basis of the dissent is found in the following excerpt:

"Decedent, in making disposition of his property by his trust deed, retained a valuable interest in the property by which he postponed final disposition of it until his death. I think that the value of that interest was rightly subject to the tax imposed by § 302 (c). This conclusion is strengthened and not avoided by construing the section as imposing a tax on the value of the interest which is shifted from donor to donee on the former's death."

Notwithstanding some language in the opinion in the Helvering case from which a different implication might be drawn, we think that the attempt to attach controlling significance to that decision here rests upon the failure to give due weight to the distinction between a tax on the transfer, such as the federal estate tax, and a tax on the succession, such as the Oregon inheritance tax. The former includes all trusts or interests in trusts passing "from the possession, enjoyment and control of the donor at his death." *Reinecke v. Northern Trust Company*, supra. As Mr. Justice Robert said in his dissenting opinion in *Coolidge v. Long*, 282 U. S. 582 (75 L. Ed. 562, 51 S. Ct. 306), "The test to be applied in cases arising under the federal estate tax law is whether the transferror has parted with every vestige of control over the beneficial enjoyment and possession of the property, and not whether the beneficiary has received it." This statement was said by the United States circuit court of appeals for the 8th district in *St. Louis Union Trust Company v. Becker*, 76 Fed. (2d) 851 (affirmed in *Becker v. St. Louis Union Trust Company*, supra), to be "in no way disputed by the majority opinion". The supreme court

has applied the distinction in *Reinecke v. Northern Trust Company*, supra, in which there was a trust creating a life estate in another than the donor with remainder over. The life interest was terminable five years after the death of the settlor or on the death of the designated life beneficiary, should she survive that date. Joint power of revocation was reserved in the donor and one of the beneficiaries, and it was held that because this power of revocation was not reserved to the donor alone, but held by him jointly with a beneficiary, the trust had for all practical purposes passed from the control of the settlor and the gift was not taxable under the federal law, even though it was intended to take effect after death.

But in *Saltonstall v. Saltonstall*, supra, where a similar joint power of revocation was reserved in the settlor and another, and the tax was imposed by a state statute on the succession to a remainder interest, which had been created before the enactment of the taxing act, the court held, against the claim that the tax was retroactive and hence in conflict with the due process clause of the fourteenth amendment, that the succession was not complete at the time of the execution of the trust instrument. The court had occasion to consider these decisions in the case of *Chase National Bank v. United States*, supra, and said that in the Saltonstall case:

"* * * we held that the freeing of the remainder of the possibility of the exercise of that power, through its termination by the death of the settlor, effected a transfer which was an appropriate subject of a succession tax and that the tax was not retroactive since the termination of the power which was prerequisite to the complete succession did not occur until after the enactment of the statute."

The court further said that it was dealing there with a succession tax and that "the distinction was there important for it was at least doubtful whether upon the death of the settlor there was any such termination, as to him, of a power of control over the remainder such as would have been subject to a tax levied exclusively on transfers, since the power was not vested in him alone, but in him and another. See Reinecke v. Northern Trust Co." But it was said that the rule of *Saltonstall v. Saltonstall*, involving a succession tax is equally applicable to a transfer tax where the power of disposition is reserved exclusively to the transferor for his own benefit. Such a power is a limitation on the gift which makes it incomplete as to the donor as well as to the donee, "and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers."

Thus the supreme court has recognized that under identical circumstances a transfer may be immune from the federal estate tax and subject to the state succession tax; that, although the power of control of the property may have passed completely from the hands of the donor, the succession may remain incomplete as to the donee. The opinions of the circuit court of appeals in the Helvering and Becker cases, the former under the name of *Helvering v. St. Louis Union Trust Company*, 75 Fed. (2d) 416, and the latter under the name of the *St. Louis Union Trust Company v. Becker*, 76 Fed. (2d) 851, were both written by Circuit Judge John B. Sanborn. In the Becker case he called attention to this distinction of which we have been speaking and said:

"In considering the question whether the transfer of the corpus of these trusts was intended to take effect in possession and enjoyment at or after death, it must

be remembered that the Federal estate tax is a tax on the transfer of property from the dead to the living and not a tax on the privilege of the living to succeed to the property of the dead. It is a transfer tax and not a succession tax. With this principle in mind, the Supreme Court has construed many trust instruments and has held that those absolutely and irrevocably vesting the corpus in a beneficiary prior to the death of a settlor, and not made in contemplation of death, were not subject to the tax imposed by section 302 (c) of the Revenue Act of 1926, and the similar provisions of other revenue acts, even though the benefits derived thereunder upon the death of the settlor would have been taxable under laws imposing a succession or inheritance tax such as those in force in some of the states.'' 76 Fed. (2d) 854.

◼ We think therefore that the doctrine of the Helvering case is not applicable here and that if ''the freeing of the remainder of the possibility of the exercise of a power through its termination by the death of a settlor'' may effect a transfer which is the appropriate subject of a succession tax, the same thing may be true where through the death of the settlor the remainder is freed of the possibility that it may revert to the donor and the trust thereby terminated.

◼ In our opinion the decision in *Coolidge v. Long*, 282 U. S. 582 (75 L. Ed. 562, 51 S. Ct. 306), (reversing *Coolidge v. Commissioner*, 268 Mass. 443 (167 N. E. 757)), cited by the appellants, does not, when rightly considered, support the appellants' position. In that case a trust instrument reserved the income from the trust property to the settlors during their joint lives, thence to the survivor of the settlors, and on the death of the survivor the principal to be divided equally between five sons. The transfer was made prior to the enactment of the state succession tax law imposing an ex-

cise on property passing to lineal descendants. Before that the law reached only collateral descendants. The supreme court held that the remainders were vested at the time of the transfer and that the enforcement of the statute imposing the excise in question would be repugnant to the contract clause of the constitution and the due process clause of the fourteenth amendment. It is clear that the effect of this decision must be limited to cases involving attempts to invade constitutional guarantees through the enforcement of a statute imposing a tax upon transfers made before the statute was passed. The court in its opinion relied on precedents of that character. It is true the opinion contains this statement: "The overwhelming weight of authority sustains the conclusion that the succession in the present case was complete when the deed took effect." In a constitutional sense, we must take that to be true, although four of the five justices thought otherwise; but, where there is no constitutional question present, the courts are almost unanimous in holding with respect to a succession tax that a trust deed reserving a life estate to the settlor with remainder over is a grant of the remainder intended to take effect in possession and enjoyment at or after the death of the transferor, regardless of the fact that in a technical sense the remainder may have vested: *In re Wallace's Estate*, supra; Gleason and Otis, "Inheritance Taxation", (4th Ed.) 381; Annotations in 100 A. L. R. 1247; 67 A. L. R. 1250; 49 A. L. R. 878. Consequently, in a case where no constitutional question is involved, *Coolidge v. Long* is not authority on the question of whether the succession is complete at the time of the transfer.

■ By the instruments of trust now under consideration the settlor no doubt divested himself of all interest in the granted property. He reserved to himself no

power of revocation or appointment and no control or disposition of the funds or administration of the trust, and the contingency upon which the title may have reverted to him did not depend upon any act of his, but solely upon the death of his daughter prior to his own death. His grandchildren, on the other hand, at the instant of the transfer, came into a present right of future enjoyment of the principal—a vested remainder subject only to be defeated by the death of their mother before that of their grandfather (*Blanchard v. Blanchard*, 1 Allen (83 Mass. 223)). That event not occurring, they would succeed to the full possession and enjoyment of the principal on the death of their mother.

█ But, despite the technical vesting of the remainder interest, in a practical sense that interest was subject to an economic burden as long as the donor remained alive. ''Taxes are very real things and statutes imposing them are measured by practical results.'' *Nichols v. Coolidge*, 274 U. S. 531 (71 L. Ed. 1184, 47 S. Ct. 710, 52 A. L. R. 1081). The terms of the trust instrument were such that the grandchildren could never come into possession and enjoyment of the corpus of the estate until after the death of Ignatz Lowengart. His death made final, certain and absolute, at least so far as the provision for reverter is concerned, what had theretofore been affected by more or less doubt and uncertainty. It removed an obstacle, placed in the trust instruments by the settlor, to the beneficiaries' ultimate enjoyment of their grandfather's bounty, and as a result an economic benefit shifted to them. These things being so, we think the succession was not complete until that event occurred, and that, necessarily, therefore, the gift was intended to take effect in possession and enjoyment after the death of the donor.

The decree orders the appellants to pay interest on the amount of the tax attributable to the inclusion in the taxable estate of the trust property at the rate of 8 per cent per annum from the time the tax was due. The appellants assign this as error.

Section 10-610, Oregon Code 1930, provides in part:

"* * * If such tax is not paid within eight months from the accruing thereof, interest shall be charged and collected thereon at the rate of eight (8%) per centum per annum from the time the tax is due and payable, unless by reason of claims upon the estate, necessary litigation, or other unavoidable delay, such tax cannot be determined and paid, as herein provided, in which case interest at the rate of six per centum (6%) per annum shall be charged upon such tax from the time of the accruing thereof until the cause of such delay is removed, after which eight per centum (8%) shall be charged."

We think that if the parties, against whom the right to impose the tax is asserted, resist its payment in good faith and on reasonable grounds, that is "necessary litigation" within the meaning of the statute: 61 C. J., Taxation, 1731, § 2662; *State v. Pabst*, 139 Wis. 561 (121 N. W. 351); *In re Irwin's Estate*, 196 Cal. 366 (237 P. 1074); *In re Duncan's Estate*, 119 Wash. 426 (206 P. 1); *In re Button's Estate*, 190 Wash. 333 (67 P. (2d) 876). We believe that our opinion reveals that the appellants were fully justified in submitting their contention to the courts, and that the court below erred in charging interest at the rate of 8 per cent instead of 6 per cent.

In that particular, the decree of the circuit court will be modified, and as so modified, it is affirmed. Neither party will recover costs or disbursements.

BEAN, C. J., and BAILEY and RAND, JJ., concur.